UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **TODD H. MERCER** | **CIVIL ACTION NO. 5:16-CV-1272** |
| **VS.** | **SECTION P** |
| **JULIAN WHITTINGTON, ET AL** | **JUDGE ELIZABETH E. FOOTE** |
| | **MAGISTRATE JUDGE HAYES** |

**REPORT AND RECOMMENDATION**

The plaintiff, Todd Mercer, an inmate housed at the Bossier Medium Correctional Center (BMCC), filed this *pro se* and *in forma pauperis* complaint on September 8, 2016, pursuant to 42 U.S.C. §1983 against the defendants, Sheriff Julian Whittington and Warden Charles Gray, alleging complaints regarding the conditions of his confinement. Specifically, he alleges that the blue mattresses provided to inmates and the shower area are covered in black mold and that there is dried urine on the toilet seats and floor around the toilets. [Rec. Doc. 1, p. 3] On September 27, 2016, he filed an Amended Complaint naming Nurse Hannah as a defendant, alleging that her failure to refill his nasal spray and allergy pills was a retaliatory act, deliberately indifferent to his medical needs. [Rec. Doc. 22] On October 18, 2016, per his Amended Complaint, petitioner substituted "Nurse Kimberly" as a defendant in the place of "Nurse Hannah." [Rec. Doc. 31] As a result, he seeks compensatory damages and requests that all materials affected with mold be removed. [Rec. Doc. 1, p. 4]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH**

**PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Statement of the Case*

On September 8, 2016, Plaintiff filed the instant matter complaining about the conditions of confinement at the Bossier Medium Correctional Center; specifically, that the blue mattresses provided to inmates and the shower area are covered in black mold and that there is dried urine on the toilet seats and floor around the toilets. [Rec. Doc. 1, p. 3] He did not file an administrative grievance regarding these complaints for fear of retaliation by the Warden.

On September 27, 2016, he filed an Amended Complaint naming Nurse Hannah (later correctly identified as "Nurse Kimberly", per Rec. Doc. 31), as a defendant, alleging that her failure to refill his nasal spray and allergy pills was a retaliatory act. [Rec. Doc. 22] Plaintiff asserts that on September 17, 2016, he informed Nurse Kimberly that it was time for a refill on his nasal spray. *Id.* On September 19, 2016, she told him to fill out a request to the doctor. *Id.* He did so, and on September 22, 2016, he was seen by the doctor who determined that his request was justified. Id. Nurse Kimberly then informed him that she would order the spray and an allergy pill from the pharmacy. *Id.* On September 23, 2016, after receiving a refill of his psychiatric medication, he discovered a note taped to the medical cart stating that the pharmacy would be closed for two (2) weeks. He had not yet received his nasal spray or allergy pill. *Id.* Plaintiff believes that his medication was purposely not ordered by Nurse Kimberly as a retaliatory action for filing the instant civil suit. *Id.*

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to

preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## 2. *Supervisory Defendants*

To recover under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law. *See Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 156 (1978); *Polk County v. Dodson,* 454 U.S. 312 (1981). Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to liability on a claim for damages under §1983. Thus, supervisory officials, like Sheriff Whittington and Warden Gray, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.,* 168 F.3d 196, 200 (5th Cir. 1999); *see also, Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability."). A defendant would be liable

under § 1983 only if he or she were "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones,* 641 F.2d 345, 346 (5th Cir. 1981); *see also, Watson v. Interstate Fire & Casualty Co.,* 611 F.2d 120, 123 (5th Cir. 1980).

Mercer has not alleged that he suffered any injury directly resulting from any order, training, or other policy implemented by Sheriff Whittington or Warden Gray that would create a vicarious liability under §1983. *See Johnson v. Moore,*958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County,* 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir. 1987); *see also, City of St. Louis v. Praprotnik,* 485 U.S. 112, 124-25 (1988). Moreover, he has not alleged a personal action or connection that would render Sheriff Whittington or Warden Gray liable. To the contrary, he states that they are liable for his "long term exposure to a known endangerment to human health in a facility in which they are in charge over." [Rec. Doc. 1, p. 3] For these reasons, Mercer's claims against these defendants as supervisory officials over the prison are frivolous and otherwise fail to state a claim for which relief can be granted.

### 3. *Conditions of Confinement*

Plaintiff has not alleged or established a constitutional violation resulting from the conditions at BMCC in order to recover under §1983. As a result, all claims should be dismissed.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with `the evolving standards of decency that mark the progress of a maturing society' . . . or which `involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble,* 429 U.S. 97, 102-103 (1976) (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent

that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).

As discussed previously, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit,* 641 F.2d at 346. Furthermore, the official must have acted with deliberate indifference to a known risk of harm to be liable under § 1983. An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *Jones v. Greninger,* 188 F.3d 322, 326 (5th Cir. 1999). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson,* 245 F.3d at 459. The plaintiff must prove facts sufficient to show "at a minimum, that the prison officials realized there was imminent danger and have refused—consciously refused, knowingly refused—to do anything about it." *Campbell v. Greer,* 831 F.2d 700, 702 (7th Cir. 1987). Applying these factors to the instant case, Mercer has not alleged a constitutional violation based on the conditions in BMCC.

"The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness to be considered a constitutional violation." *Green v. Gusman*, No. 15-1738, 2016 WL 3033541, at *4 (E.D. La. May 6, 2016). The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Id.* (citing *Holloway v. Gunnell,* 685 F.2d 150, 156 (5th Cir. 1982)). The Courts also have repeatedly held "that the Constitution does not mandate prisons with comfortable

surroundings or commodious conditions." *Id. (citing Talib,* 138 F.3d at 215 (citing *Rhodes,* 452 U.S. at 349); *accord Hernandez v. Velasquez,* 522 F.3d 556, 560 (5th Cir. 2008)).

In keeping with this philosophy, the federal courts have recognized that certain institutional problems such as dust, mold, and stale air do not amount to a constitutional violation. *See, e.g., Green v. Gusman,* No. 15-1738, 2016 WL 3033541, at*4 (E.D. La. May 6, 2016), *White v. Gusman,* No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox,* No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan.16, 2013), *adopted,* 2013 WL 622399, at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman,* No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), *adopted,* 2012 WL 1825302, at *1 (E.D. La. May 18, 2012). To the extent Green asserts that these factors were present at BMCC, he has not stated a constitutional violation.

Furthermore, the jurisprudence has repeatedly held that the presence of mold and dampness in a prison setting does not render an inmate's confinement unconstitutional. *Green, supra* (citing *Eaton v. Magee,* No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw,* No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), *adopted,* 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer,* No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted))).

Thus, Mercer's allegations about mold fail to establish constitutional violations. *See Smith*

*v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *Davis v. St. Charles Parish Corr. Ctr.,* No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing *Talib,* 138 F.3d at 215). "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional." *Wilson v. Lynaugh,* 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim.). As one federal appellate court has concluded, "[l]leaky toilets and puddles are unpleasant but not unconstitutional." *Smith v. Melvin,* No. 95-2531, 1996 WL 467658, at *2 (7th Cir. Jul. 26, 1996); *accord Davis,* 2010 WL 890980, at *9; *Wilkerson v. Champagne,* No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003).

For the same reasons stated above, Mercer's allegations regarding dried urine on the toilet seats and the floor around the toilet neither establish a constitutional violation nor render his confinement unconstitutional.

4. *Retaliation*

In addition to the complaints regarding the conditions of his confinement, plaintiff has alleged that he was not given a refill of his nasal spray and allergy pill by Nurse Kimberly in retaliation for the filing of the instant civil suit.

To prevail on the claim for retaliation under Section 1983, a civil rights plaintiff must prove (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which, in this context means

that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir.1998). The prisoner must produce direct evidence of motivation, or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir.1995). The plaintiff must allege more than just his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1999).

Here, plaintiff has alleged, in conclusory fashion, that the fact that he did not receive his medication prior to the pharmacy closing for two weeks, was an act of retaliation triggered by the filing of the instant complaint. Plaintiff has failed to establish causation as required by the jurisprudence. As noted above, plaintiff must allege facts to demonstrate that "but for" the exercise of his constitutional right, the alleged retaliatory adverse act – not receiving the medication prior to the pharmacy closing for two weeks– would not have occurred.. According to his Amended Complaint, he did receive a refill of one medication, his psyche medication prior to the pharmacy closing. [Rec. Doc. 22, p. 1] However, it seems that the pharmacy closed, for an undisclosed reason, prior to filling his prescriptions for nasal spray and allergy pill. Only six (6) days elapsed between the date he requested these refills and the date the pharmacy closed. While he "believes" this occurred in retaliation for filing the instant suit, this claim fails as he "must allege more than just his personal belief that he is the victim of retaliation." *See Johnson, supra.* Thus, plaintiff fails to state a claim for which relief may be granted

### *Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH**

8

**PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

**IT IS FURTHER RECOMMENDED** that the Motion for Preliminary Injunction [Rec. Doc. 4], Motion to Intervene/Writ for Protection [Rec. Doc. 5], Motion to Compel Interrogatories [Rec. Doc. 6], Motion to Introduce Evidence [Rec. Doc. 7], Motion for Additional Testimony [Rec. Doc. 11], Motion for Expert Testimony [Rec. Doc. 12], Motion to Secure and Produce Documents and Video [Rec. Doc. 13], Motion to Secure and Collect Evidence [Rec. Doc. 14], Motion for Laboratory Testing [Rec. Doc. 15], Motion to Test Evidence [Rec. Doc. 16], Motion to Compel Lab Test [Rec. Doc. 17], Motion to Request Medical Transcript [Rec. Doc. 23], Motion to Direct Copies [Rec. Doc. 25], Motion to Request Federal Jurisdiction [Rec. Doc. 26], Motion to Request that Defendants be Served [Rec. Doc. 29] and Motion to Compel [Rec. Doc. 30] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, November 29, 2016.

                                            **KAREN L. HAYES**
                            **UNITED STATES MAGISTRATE JUDGE**